UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHOICE ENERGY, LLC, d/b/a 4 CHOICE ENERGY,<br><br>                Plaintiff,<br><br>   v.<br><br>SUNSEA ENERGY LLC; SUNSEA ENERGY NJ, LLC; SUNSEA ENERGY HOLDINGS, LLC; PROTEL MARKETING INC.; EZE SALES & MARKETING INC.; JACOB ADIGWE; ROMAINE REID; GERMAINE REID; XYZ CORPORATIONS 1-10 (said names being fictitious); and JOHN DOES 1-10 (said names being fictitious),<br><br>                Defendants. | Civil Action No.: 1:20-cv-14139 |

**COMPLAINT AND JURY DEMAND**

      Plaintiff Choice Energy, LLC, by and through its attorneys, Bevan Mosca & Giuditta, P.C., by way of this Complaint, seeks damages against Defendants SunSea Energy LLC; SunSea Energy NJ, LLC; SunSea Energy Holdings, LLC; Protel Marketing Inc.; Eze Sales and Marketing, Inc.; Jacob Adigwe; Romaine Reid; Germaine Reid; John Doe Marketers 1-10 (said names being fictitious); and XYZ Corporations 1-10 (said names being fictitious), and states as follows:

**PARTIES AND JURISDICTION**

      1.     Plaintiff Choice Energy, LLC d/b/a 4 Choice Energy ("Choice Energy") is an Iowa limited liability company with its principal place of business at 601 SW Ninth Street, Des Moines, Iowa, and a registered office in Freehold, New Jersey.

2. Defendants SunSea Energy LLC; SunSea Energy NJ, LLC; and SunSea Energy Holdings, LLC (collectively "SunSea") are Delaware limited liability companies, having their principal place of business at 1451 Chews Landing Road, Clementon, New Jersey 08021.

3. Defendant Protel Marketing Inc. ("Protel") is a Florida corporation having a principal place of business at 1401 Village Blvd., Apt. 1822, West Palm Beach, Florida 33409.

4. Defendant Eze Sales & Marketing Inc. ("Eze") is a Pennsylvania corporation, having a principal place of business at 14 East Stratford Avenue, Lansdowne, Pennsylvania 19050.

5. Eze is incorporated as a foreign corporation in the state of New Jersey with a registered agent, Eze Sales and Marketing Inc., 455 Haddon Avenue, Camden, NJ 08103.

6. Defendant Jacob Adigwe ("Adigwe"), a resident of Pennsylvania, is a co-founder, CEO, and 100% member of the SunSea entities.

7. Adigwe also owns Eze.

8. Defendant Romaine Reid ("R. Reid"), a resident of Saint Vincent and the Grenadines, is a co-founder and vice-president of SunSea.

9. R. Reid is also owner, CEO, and president of Protel.

10. Defendant Germaine Reid ("G. Reid"), a resident of Saint Vincent and the Grenadines, is a director of Protel. (Defendants SunSea, Protel, Eze, Adigwe, R. Reid, and G. Reid are collectively referred to hereinafter as the "Defendants").

11. SunSea operates as an Energy Supply Company ("ESCO") servicing customers in, *inter alia*, New Jersey.

12. Protel's operations are located in St. Vincent and the Grenadines, as well as Jamaica.

{00108447.5 }                                     2

13. XYZ Corporations 1-10 refer to entities currently unknown to Choice Energy including (a) other marketing companies calling customers and misrepresenting that the calls were made on behalf of Choice Energy, and (b) other ESCOs and other corporations either directly misrepresenting that they are contacting customers on behalf of Choice Energy, or having other companies do so on their behalf.

14. John Does 1-10 refer to individuals currently unknown to Choice Energy who are managers, officers, and directors of the corporate entities referenced herein, and/or direct participants in the misconduct herein alleged.

15. Jurisdiction in this matter is based upon 15 U.S.C. § 1121 because this Complaint alleges a cause of action under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the federal courts have original jurisdiction over such claims.

16. Jurisdiction is also appropriate pursuant to 27 U.S.C. § 1332 because Choice Energy and all Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.00.

17. For the purposes of 27 U.S.C. § 1332, each of the SunSea entities is a citizen of Pennsylvania because each is a limited liability company and because Adigwe, a citizen of Pennsylvania, is the sole member of either (a) the entity or (b) another entity which in turn is the sole member of the entity.

18. For the purposes of 27 U.S.C. § 1332, Choice Energy is a citizen of Iowa because the only members of Choice Energy, Michael Joseph Needham and Brent Allen Hood, are both citizens of Iowa.

19. This Court has personal jurisdiction over Defendants because, among other things, Defendants conduct business in this District and many of the actions giving rise to this Complaint occurred in this District.

20. This action is properly venued in this District because, among other things, Defendants conduct business in this District and many of the actions giving rise to this Complaint occurred in this District.

21. Specifically, Defendants has made misrepresentations and committed violations of the statues set forth below directed to customers located in the state of New Jersey.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### I.     Choice Energy

22. Choice Energy, doing business as 4 Choice Energy, is a licensed electric supplier providing electric generation services for primarily residential customers and businesses. In states in which the energy market has been deregulated by statute or other regulatory action, a customer can elect to have their electric generation services supplied by an ESCO instead of their incumbent local utility.

23. Choice Energy is licensed as an ESCO in Connecticut, New Jersey, Ohio, and Pennsylvania to sell electric generation services to consumers.

24. Choice Energy operates as an ESCO only in the states in which it is licensed.

25. Choice Energy obtains customers through a variety of marketing methods, including through the use of telemarketers.

26. Choice Energy prides itself on providing customers with affordable options for alternative electricity supply and obtaining those customers through truthful marketing practices.

27.     Choice Energy offers a number of rate plans that allow consumers to choose an energy supplier that better meets their needs than the local default utility service provider.

## II.     Defendants' Business

28.     SunSea is licensed as an ESCO in Maryland, New Jersey, New York, Ohio, and the District of Columbia to sell electric generation services and natural gas supply to consumers.

29.     Protel offers a range of marketing, sales, and customer care solutions products and services, including sales call center and telemarketing services.

30.     Eze provides product promotion, telemarketing, and energy consultant services, and specializes in energy sales.

31.     According to SunSea's Maryland ESCO license application, SunSea has established an "exclusive relationship" with Eze and Protel, which are owned by Adigwe and R. Reid, respectively, and which have a total of 600 call center seats and 1,200 call center agents.

32.     Protel and Eze both provide sales call center and telemarketing services to SunSea.

33.     Protel and Eze make unsolicited sales calls to consumers in order to convince consumers to switch their electric generation services and/or natural gas supply from the local default utility service, or from other ESCOs, to SunSea.

34.     The marketing strategy is to promote an initial low rate to entice the consumers to switch providers and then increase the rates substantially, causing consumers to see dramatic increases in their utility bills.

## III.     Defendants' Deceptive Practices

35.     Publicly available reviews and complaints with respect to SunSea indicate that many consumers are dissatisfied with SunSea's services because rates are significantly higher than the rates of the local default utility provider.

36. Defendants have developed a telemarketing strategy by which they inform potential customers that they are calling on behalf of an ESCO other than SunSea.

37. Consumers who agree to switch their service from the default utility thus believe they are switching to an ESCO other than SunSea.

38. Defendants' wrongful actions consist of having their telemarketers falsely represent to customers that they are calling on behalf of Choice Energy.

39. By doing so, Defendants are intentionally confusing customers by making false and/or misleading statements of fact and using Choice Energy's mark in a manner likely to cause dilution of the mark.

40. These false and misleading statements have a twofold purpose. First, customers who agree to switch their commodity supply believe they are being switched to Choice Energy, but have in reality been transferred to SunSea. This is a practice known in the industry as "slamming."

41. The second purpose of this fraudulent scheme is to attempt to insulate Defendants from having to comply with laws governing telemarketers including the National Do Not Call Registry, 15 U.S.C. §§ 6151-6155, and the New Jersey Do Not Call Law. A customer who is on either or both lists would believe that Choice Energy, rather than Defendants, was making the call in violation of law.

42. Thus, when Defendants place telemarketing calls to consumers, if the customer agrees to a sale, the customer is misdirected or slammed to SunSea. Conversely, if the customer is not interested in switching providers, but is on a consumer protection list, the actual entities making the call—Defendants—do not receive the complaint.

43. Each of the wrongful telemarketing calls alleged herein were authorized by and made on behalf of the Defendants, who are therefore vicariously liable for the resulting harms.

**Tortious Call Example #1**

44. In or around August of 2020, Diane S. ("Consumer 1"), a New Jersey resident, telephone number (609) ***-*899, received an incoming telemarketing call from what she was led to believe was Choice Energy. She agreed to switch her electrical supply to Choice Energy.

45. Under New Jersey law, a customer's utility is required to provide written notice of a change in supplier.

46. Consumer 1 received such a notice dated September 17, 2020 indicating that her service was being switched to SunSea.

**Tortious Call Example #2**

47. On August 20, 2020, Choice Energy received an email from the Better Business Bureau ("BBB") regarding a consumer complaint ("Consumer 2").

48. Consumer 2 alleged that he received several calls from an individual claiming to work for Choice Energy and that he can save money on energy costs. The consumer provided the telephone number on which he had received the calls and stated that the number is on the National Do Not Call Registry.

49. Choice Energy researched the allegations made in Consumer 2's complaint by the name, address, and telephone number provided, and determined that the consumer's contact information was never in Choice Energy's database and that neither Choice Energy nor its telemarketing representatives dialed the telephone number provided by the consumer.

50. The BBB closed the complaint against Choice Energy as being made against the wrong company and invalid.

**Tortious Call Example #3**

51. On August 4, 2020, Choice Energy received an email from consumers Jon and Jean R. ("Consumer 3"), residing in Marion, New York, requesting cancellation "[w]ith regards to reference #JS117 ie. Sunsea energy confirmation #00965707."

52. Choice Energy has no record of those individuals and does not serve customers in New York.

**Tortious Call Example #4**

53. In August 2020, a consumer named Vincent S. ("Consumer 4") called Choice Energy and complained that the telemarketer had claimed to be from Choice Energy during the initial sales call, but then, when Consumer 4 was transferred to another representative in order to enroll, the second representative represented that the company was SunSea.

**Tortious Call Example #5**

54. On February 26, 2020, a consumer called Choice Energy to complain about service ("Consumer 5").

55. Consumer 5 was not a Choice Energy customer. Upon reviewing the bill, the consumer realized that service was actually being provided by SunSea.

**Tortious Call Example #6**

56. Choice Energy received a letter dated August 22, 2017 from a resident of Pittsburgh, Pennsylvania named Stewart A. ("Consumer 6") stating that he had received an unsolicited telemarketing call on that date.

57. Consumer 6's letter represented that the telemarketing agent represented that the call was on behalf of Choice Energy.

58. Choice Energy does not serve customers in Pittsburgh, Pennsylvania, has never marketed to customers in Pittsburgh, and its telemarketers never contacted the number provided by Consumer 6.

**Tortious Call Example #7**

59. On August 4, 2020, Choice Energy received an email at its customer service email address from a consumer ("Consumer 7") requesting that his service be cancelled.

60. Choice Energy determined that it did not provide service to the individual or address identified in the email because the service address was in New York.

61. The email from the purported customer referenced a "Sunsea energy confirmation" number.

## COUNT ONE
### (Violation of Lanham Act 15 U.S.C. § 1125(a)(1)(A))

62. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

63. 15 U.S.C. § 1125(a)(1)(A) prohibits the use in commerce of any word, term, name, symbol, or device, or any combination thereof, or any false or misleading description of fact or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of such person with another person, or approval or his or her goods, services, or commercial activities by another person.

64. Choice Energy uses its name, including, but not limited to, Choice, Choice Energy, 4 Choice, and 4 Choice Energy, in connection with the sale of electric generation services in commerce.

65. Defendants have used Choice Energy's name and contact information (such as website address, customer service phone and email address), without its authorization, in connection with the sale of goods or services in commerce.

66. Defendants' use of Choice Energy's name and contact information is a false or misleading description of fact or false or misleading representation of fact as they are using it to sell in commerce the goods or services of SunSea, and not Choice Energy.

67. Defendants' use of Choice Energy's name and contact information is causing reputational harm to Choice Energy because consumers believe they are being harassed and/or defrauded by Choice Energy.

68. As a result of Defendants' actions, Choice Energy has been and continues to be damaged in its business and property.

69. Defendants' use of Choice Energy's name and contact information is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Choice Energy with another, or as to the origin of the goods or services, or commercial activities of Choice Energy.

## COUNT TWO
### (Violation of Lanham Act 15 U.S.C. § 1125(a)(1)(B))

70. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

71. 15 U.S.C. § 1125(a)(1)(B) prohibits the use in commerce of any word, term, name, symbol, or device, or any combination thereof, or any false or misleading description of fact or false or misleading representation of fact in commercial advertising or promotion, misrepresenting

the nature, characteristics, qualities of his or another person's goods, services, or commercial activities.

72. As set forth above, Defendants have used Choice Energy's name and contact information, without its authorization, in connection with the sale of goods or services in commerce.

73. Defendants' use of Choice Energy's name and contact information in a commercial advertising or promotion is a misrepresentation of the quality of their services or commercial activities.

74. Defendants' use of Choice Energy's name and contact information is causing reputational harm to Choice Energy because consumers believe they are being harassed and/or defrauded by Choice Energy.

75. As a result of Defendants' actions, Choice Energy has been and continues to be damaged in its business and property.

76. Defendants' use of Choice Energy's name and contact information is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Choice Energy with another, or as to the origin of the goods or services, or commercial activities of Choice Energy.

**COUNT THREE**
**(Violation of Lanham Act 15 U.S.C. §1125(c))**

77. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

78. 15 U.S.C. § 1125(c)(1) provides that subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled

to an injunction against another person who, at any time after the owner's mark in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark.

79. By misrepresenting to consumers that they are engaging in commerce on behalf of Choice Energy, Defendants are causing dilution by blurring or dilution by tarnishment of Choice Energy's marks.

80. Defendants made these misrepresentations after the enactment of the Trademark Dilution Revision Act of 2006.

81. As such, Choice Energy is entitled to an injunction preventing Defendants from continuing to violate this section.

## COUNT FOUR
### (Violation of 15 U.S.C. § 1117)

82. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

83. 15 U.S.C. § 1117(a) provides that for a violation of the Lanham Act, as set forth above, the plaintiff shall be entitled to recover defendants profits, any damages sustained by the plaintiff, and the costs of the action.

84. As set forth above, Defendants have fraudulently switched customers to service with SunSea after misrepresenting to customers that they were switching to Choice Energy.

85. As such, Choice Energy is entitled to receive the profits SunSea made as a result of any customers acquired where the sales call made such misrepresentations.

86. As such, Choice Energy is entitled to compensation of any damages sustained as a result of the misrepresentations, including, but not limited to, costs of suit to defend against actions

brought by consumers who believed they were called by Choice Energy, but were actually called by Defendants.

87. As such, Choice Energy is also entitled to costs of this suit.

## COUNT FIVE
### (New Jersey Consumer Fraud Act)

88. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

89. N.J.S.A. 56:8-2.25 prohibits the transaction of business under assumed name.

90. As set forth above, Defendants violated the New Jersey Consumer Fraud Act by misrepresenting that they were calling New Jersey consumers on behalf of Choice Energy.

91. As a result, Choice Energy was damaged.

92. A violation of the New Jersey Consumer Fraud Act is punishable by treble damages and the imposition of attorneys' fees and costs of suit.

## COUNT SIX
### (New Jersey Consumer Fraud Act)

93. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

94. New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq.*, prohibits the use of any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged.

95. Defendants are using Choice Energy's name and contact information instead of their own in connection with the sale or advertisement of their merchandise with the intent of having consumers rely on the assertion that they are calling on behalf of Choice Energy rather than Defendants.

96. Defendants are using Choice Energy's name and contact information to deceive consumers into believing they are switching their utility service to Choice Energy when they are in fact switching their utility service to SunSea.

97. Defendants know that they are misrepresenting to consumers the identity of the ESCO on whose behalf they are calling.

98. As a result of Defendants' actions, Choice Energy has been and continues to be damaged in its business and property.

99. As a result, Choice Energy was damaged.

100. A violation of the New Jersey Consumer Fraud Act is punishable by treble damages and the imposition of attorneys' fees and costs of suit.

## COUNT SEVEN
### (Fraud)

101. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

102. Defendants' actions set forth were material misrepresentations of the presently existing fact that they were <u>not</u> calling consumers on behalf of Choice Energy.

103. Defendants made these misrepresentations with the knowledge or belief that others would rely on the false statements.

104. Consumers contacted by Defendants reasonably relied on such misrepresentations.

105. As a result, Choice Energy has been subjected to claims for alleged violations of the federal and state do-not-call lists, when such calls were actually made by Defendants.

106. As a result, Choice Energy was damaged.

## COUNT EIGHT
### (Defamation)

107. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

108. Defendants made false statements about telemarketing calls being placed by Choice Energy.

109. These telemarketing calls containing false representations were made to consumers in the State of New Jersey who were called by Defendants.

110. The false statements alleged misconduct by Choice Energy in connection with its trade or profession, and/or business reputation.

111. As a result of these false statements, Choice Energy was damaged.

## COUNT NINE
### (Trade Libel)

112. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

113. Defendants false solicitation calls set forth above were made to third persons.

114. Defendants made calls to persons on the state and federal do-not-call lists and knowingly misrepresented that such calls were made on behalf of Choice Energy.

115. Defendants' false solicitation calls set forth above placed Choice Energy's business in a kind calculated to prevent others from dealing with plaintiff or otherwise disadvantageously interfered with Plaintiff's relations with others.

116. As a result, Plaintiff was damaged.

## COUNT TEN
**(Unfair Competition)**

117. Choice Energy repeats and realleges each and every prior allegation as if fully set forth herein.

118. Defendants are unfairly competing in the marketplace by misrepresenting to consumers the ESCO on whose behalf they are calling.

119. Defendants are unfairly competing in the marketplace by misrepresenting to consumers the identity of the ESCO that will be providing their service if the consumer agrees to the switch.

120. As a result of Defendants' actions, Choice Energy has been and continues to be damaged in its business and property.

WHEREFORE Choice Energy, LLC d/b/a 4 Choice Energy demands judgment in its favor and against defendants SunSea Energy LLC; SunSea Energy NJ, LLC; SunSea Energy Holdings, LLC; Protel Marketing Inc.; Eze Sales and Marketing, Inc.; Jacob Adigwe; Romaine Reid; and Germaine Reid, jointly and severally, for compensatory damages **in excess of $20,000,000**, injunctive relief preliminarily and permanently restraining and enjoining Defendants from further misconduct, treble damages, punitive damages, attorneys' fees, costs of suit, and for all other legal and equitable relief this Court may deem just.

## **DEMAND FOR JURY TRIAL**

Choice Energy, LLC hereby demands trial by jury on all issues so triable.

Dated: October 8, 2020

                                                  Respectfully Submitted,
                                                  CHOICE ENERGY, LLC,

                                                  By Its Attorneys,

                                                  s/ *John D. Coyle*
                                                  John D. Coyle 029631001
                                                  Jennifer G. Capone 015502004
                                                  Jesse C. Ehnert 038262007
                                                  BEVAN, MOSCA & GIUDITTA, P.C.
                                                  222 Mount Airy Road
                                                  Suite 200
                                                  Basking Ridge, NJ 07920
                                                  Telephone: (908) 753-8300
                                                  Facsimile: (908) 753-8301
                                                  jcoyle@bmg.law

## **CERTIFICATION UNDER L. CIV. R. 11.2**

I hereby certify that, to the best of my knowledge, the matter in controversy herein is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: October 8, 2020

                                                  s/ *John D. Coyle*
                                                  John D. Coyle 029631001
                                                  Jennifer G. Capone 015502004
                                                  Jesse C. Ehnert 038262007
                                                  BEVAN, MOSCA & GIUDITTA, P.C.
                                                  222 Mount Airy Road
                                                  Suite 200
                                                  Basking Ridge, NJ 07920
                                                  Telephone: (908) 753-8300
                                                  Facsimile: (908) 753-8301
                                                  jcoyle@bmg.law