[ECF No. 76]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **CHOICE ENERGY, LLC,** d/b/a 4 CHOICE ENERGY,<br><br>    **Plaintiff,**<br><br>  v.<br><br>**SUNSEA ENERGY LLC et al.,**<br><br>    **Defendants.** | Civil No. 20-14139 (KMW/SAK) |

**OPINION AND ORDER**

This matter is before the Court on the Cross-Motion for Spoliation Sanctions [ECF No. 76] filed by Plaintiff Choice Energy, LLC d/b/a 4 Choice Energy ("Plaintiff" or "Choice Energy"). The Court received the opposition of Defendants Sunsea Energy LLC, Sunsea Energy NJ, LLC, Sunsea Energy Holdings, LLC (collectively, "Sunsea Energy"), Protel Marketing Inc. ("Protel"), Eze Sales & Marketing Inc. ("Eze"), Jacob Adigwe, Romaine Reid, and Germaine Reid (collectively, the responding parties will be referred to as "Defendants") [ECF No. 85]. The Court also received Plaintiff's reply [ECF No. 86]. The Court exercises its discretion to decide Plaintiff's cross-motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed in detail, Plaintiff's cross-motion is **DENIED**.

**I. BACKGROUND**

Plaintiff filed this action against Defendants on October 8, 2020. *See* Compl. [ECF No. 1]. Plaintiff is an electric supply company ("ESCO") licensed to provide electric generation services to residential and business consumers in several states, including New Jersey. *See id.* ¶¶ 22–27.

Sunsea Energy is an ESCO similarly licensed to do business in New Jersey. *See id.* ¶ 28. Protel and Eze are marketing entities that Plaintiff alleges are engaged in an "exclusive relationship" with Sunsea Energy. *See id.* ¶¶ 29–31. The three individual defendants are all allegedly associated with these various entities in one form or another.[1] In brief, Plaintiff alleges that Defendants engage in deceptive telemarketing practices by misrepresenting the ESCO for which they make solicitation calls. *See id.* ¶¶ 33–37. Such practices "consist of having their telemarketers falsely represent to customers that they are calling on behalf of Choice Energy." *Id.* ¶ 38. Thus, Plaintiff alleges that Defendants intentionally confuse customers using the "Choice Energy" mark in a manner likely to cause dilution of the mark. *See id.* ¶ 39. Plaintiff asserts claims under the Lanham Act, based on Defendants' alleged use of its mark, and the New Jersey Consumer Fraud Act. *See id.* ¶¶ 62–100. It also asserts common law fraud, defamation, trade libel, and unfair competition claims. *See id.* ¶¶ 101–120. Plaintiff seeks monetary and injunctive relief with respect to all claims.

During the course of discovery, various disputes arose. Among these was a dispute arising out of Defendants' production of "4,311 files comprising recordings of telemarketing calls." Pl.'s Letter, Dec. 20, 2021, at 2 [ECF No. 34] (citing Request for Production ("RFP") Nos. 9 and 10). In brief, Plaintiff called into question the integrity of the production and the manner in which the recordings were produced. Plaintiff alleged that Defendants failed to include all recordings from January 1, 2018 to the present and omitted an entire category of recordings—namely, initial sales calls. *See id.* Plaintiff also alleged that there was "no apparent organization of the [audio] files to indicate how they are kept in the usual course of business." *Id.*

---

[1] Defendant Jacob Adigwe is a co-founder, Chief Operating Executive ("CEO"), and sole member of Sunsea Energy. *See id.* ¶ 6. He "also owns Eze." *Id.* ¶ 7. Defendant Romaine Reid is allegedly a co-founder and vice-president of Sunsea Energy. *See id.* ¶ 8. He is also the owner and CEO of Protel. *See id.* ¶ 9. Defendant Germaine Reid is allegedly a director of Protel. *See id.* ¶ 10.

In response, Defendants asserted the production was a complete account of all recordings since Sunsea Energy "started marketing in 2019." Defs.' Letter, Dec. 21, 2021, at 2 [ECF No. 35]. They also asserted that no index existed for the recordings. *See id.* As for the alleged omission, Defendants contended that "many of the calls from prospective customers" were inbound and not generated by initial sales calls. *Id.* Rather, these calls were generated as a result of "mailed brochures and Google advertisements," or possibly referrals from third-party lead providers. *Id.* Plaintiff then demanded Defendants produce certified statements to the extent they claimed not to possess additional recordings or further information on how the files were organized. *See* Pl.'s Letter, Dec. 29, 2021, at 2 [ECF No. 36]. Plaintiff also demanded that Defendants "identify and produce documents and recordings for all 'lead providers' and any other sources (advertisements, etc.) that . . . constitute part of the sales process." *Id.* Defendants replied that the "telemarketing recordings have been produced as they are kept in the usual course of business. Nothing has been withheld." Defs.' Letter, Dec. 29, 2021, at 2 [ECF No. 37]. However, they expressed uncertainty as to whether any of the calls "were elicited" by third-party lead providers and stated they would further investigate the issue. *See id.*

Thereafter, the Court held a discovery dispute hearing and heard oral argument. An Order was issued memorializing the Court's rulings. *See* Order, Jan. 13, 2022 [ECF No. 38]. Defendants were directed, in part, to supplement or certify their responses to RFP Nos. 9 and 10, as appropriate. *See id.* ¶¶ 1–2. In response to the Court's Order and Plaintiff's requests, which sought copies of "all Recordings of telemarketing calls made by and/or on behalf of any of the Defendants," and copies of "all Recordings of telemarketing calls made by and/or on behalf of any of the Defendants, including Sales Calls, Telemarketing, and TPV," on February 2, 2022, Defendants supplemented their initial responses as follows:

> **SUPPLEMENTAL REPLY TO (9) AND (10)**
>
> Defendants do not possess documents or information regarding the manner in which telemarketing calls are organized except as follows: The store calls are searchable by customer name or phone number. The file of recordings [initially] produced on October 5, 2021 is searchable in this manner by using the search box.
>
> Defendants have determined that they did not use lead providers and therefore have no lead provider recordings.

Defs.' Opp'n, Ex. C, at 1–2 [ECF No. 85-3]. Defendants also produced the requested statements certifying their responses were full and complete. *See id.* at 4–6. A second supplemental response was served on April 19, 2022, which reads as follows:

> **SECOND SUPPLEMENTAL REPLY TO (9) AND (10)**
>
> Defendants previously produced (on October 5, 2021) all such recordings in existence with no recordings withheld.

Defs.' Opp'n, Ex. D, at 2 [ECF No. 85-4]. Defendants also produced supplemental verifications at Plaintiff's request to specifically identify which individual defendants were signing on behalf of which entities. *See id.* at 5–7. Ultimately, Plaintiff's counsel represented to the Court that this particular dispute was resolved. *See* Pl.'s Letter, June 6, 2022, at 1 [ECF No. 53] (attaching copies of Defendants' supplemental responses and verifications thereto).

On November 11, 2022, Defendants filed a motion for summary judgment [ECF No. 72]. Plaintiff subsequently filed its opposition papers to Defendants' motion together with the instant cross-motion pursuant to Local Civil Rule 7.1(h). *See* Pl.'s Opp'n [ECF No. 75]; Pl.'s Cross-Mot. [ECF No. 76]. Plaintiff alleges Defendants' summary judgment "motion is based on the materially false premise that" they have "produced all of [their] telemarketing sales recordings." Pl.'s Br. at 1 [ECF No. 75-1]. Seemingly convinced that additional recordings of Defendants misrepresenting themselves as Choice Energy exist but were not produced, Plaintiff accuses Defendants and their counsel of "conceal[ing] and delet[ing] relevant recordings." *Id.* In support, Plaintiff cites to a

4

slew of purported evidence including "affidavits and other sworn statements,[2] orders by regulatory agencies, and many of the audio recordings exchanged in discovery." *Id.* at 6; *see id.* at 6–18.

The core theory underlying Plaintiff's allegations of spoliation concern its contention that Defendants engage in "a two-call fraudulent marketing scheme." *Id.* at 1. The first call is where the alleged misrepresentation occurs. *See id.* In the second call, Defendants accurately identify themselves. *See id.* at 2. Plaintiff contends Defendants only produced recordings of calls of the second variety. Despite representing that "actual recordings" of such "first calls" were attached to Plaintiff's cross-motion, Plaintiff appears to submit only one. Specifically, Plaintiff includes two audio files of sales calls recorded by Wendy Schuchmann, the plaintiff/consumer in another action involving Sunsea Energy and its defense counsel in this case. *See* Schuchmann Decl., Exs. A, B; *Schuchmann v. Sunsea Energy NJ, LLC*, 1:22-cv-05354-RMB-AMD (D.N.J. filed Sept. 1, 2022). The two recordings serve as an exemplar of Plaintiff's theory: In the first, a "Sunsea telemarketer" allegedly misrepresents that he is calling on behalf of Choice Energy. Pl.'s Br. at 1. In the other, the telemarketer "correctly" identifies the entity as Sunsea Energy. *See id.* at 35. Plaintiff alleges these recordings were produced to defense counsel in the *Schuchmann* action and that counsel then failed to produce them here. *See id.* Defendants' failure to produce the *Schuchmann* recordings, or any other recordings of such "first calls," largely form the basis of Plaintiff's spoliation claim.[3] As such, Plaintiff alleges it has demonstrated that Defendants spoliated such evidence and seeks sanctions in the form of an adverse inference and an award of attorneys' fees.

---

[2] See the Declaration of Brent Hood, a managing partner at Choice Energy, LLC [ECF No. 75-4] (attaching Exs. A, A1, and B–D); the Declaration of Jesse C. Morris, Esquire, counsel for Plaintiff [ECF No. 75-5] (attaching Exs. A–R); the Declaration of John D. Coyle, Esquire, counsel for Plaintiff [ECF No. 75-6]; the Declaration of Wendy Schuchmann, the plaintiff/consumer from the *Schuchmann* action, addressed *infra* [ECF No. 75-7] (attaching Exs. A–B); and the Declaration of Ryan Pircio, a consumer residing in Columbus, Ohio [ECF No. 75-8] (attaching Ex. A).

[3] *See id.* at 32–37; *see also* Morris Decl. ¶¶ 14–18; Coyle Decl. ¶¶ 13–14; Hood Decl. ¶¶ 8–13.

Defendants oppose Plaintiff's cross-motion. They allege that, because the record is devoid of evidence supporting Plaintiff's claims, its counsel resorts to "making unfounded allegations of spoliation against the defendants and dishonest and unethical allegations against defense counsel." Defs.' Opp'n at 1. Defendants insist Plaintiff fails to produce any evidence of spoliation and, thus, its cross-motion must be denied. *See id.* at 4–8. Defendants also note the case law Plaintiff relies upon "pertains to situations where it was established that discoverable documents were destroyed." *Id.* at 5 (noting the issues in those cases concerned "whether or not a duty existed to preserve the destroyed evidence and the appropriate remedy to be imposed"). In particular, Defendants assert that they have no independent record of the purported Schuchmann calls and deny making them. *See id.* at 15. However, defense counsel does not deny receiving the recordings in the *Schuchmann* action and asserts they have been preserved. *See id.* at 13–14. Appearing to dispute the relevance and/or responsiveness of the *Schuchmann* recordings, counsel contends they could have been the subject of a discovery motion in this action—but "not a basis for a charge of spoliation." *Id.* at 14 (noting further that "no discovery request served by plaintiff in this litigation . . . covers recordings made by a third party"). Defendants also contend that they would have produced the *Schuchmann* recordings had Plaintiff properly sought them. *See id.* In sum, Defendants demand that Plaintiff's cross-motion "be seen for what it is: A desperate attempt to muddle a record devoid of evidence to establish a *prima facie* case against the defendants." *Id.* at 19.

In reply,[4] Plaintiff seeks to rebut Defendants' claim that there is no evidence of spoliation. *See* Pl.'s Reply at 2. Plaintiff contends it readily establishes "direct evidence" showing Defendants concealed or destroyed recordings of specific sales calls. *See id.* (citations omitted). Plaintiff cites

---

[4] Plaintiff filed its reply without first seeking leave of Court in violation of Local Civil Rule 7.1(h). In the interests of expediency, the Court will grant Plaintiff's request and consider its reply brief.

to instances where individuals received such calls that Defendants allegedly do not deny making. *See id.* at 2–4. The recordings of these calls were not produced. Plaintiff closes by again accusing counsel of actively concealing said evidence in concert with his clients. *See id.* at 4–5.

## II. **DISCUSSION**

### A. Legal Standard

Spoliation of evidence traditionally occurs where evidence is either altered or destroyed. *See Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). However, in the context of spoliation of electronically stored information ("ESI"), Federal Rule of Civil Procedure 37(e) applies.[5] Rule 37(e) specifically provides as follows:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

---

[5] The Court notes no party cites to this rule despite its apparent application here. At the same time, apart from the *Schuchmann* recordings—which constitute ESI—Plaintiff has failed to address the form in which the other evidence existed prior to its purported spoliation. This entails the category of evidence of recordings of so-called "first calls." Since the recordings produced by Defendants in this action and the recordings produced in the *Schuchmann* action all constitute ESI, the Court will presume that the alleged recordings of "first calls" also constitute ESI. This notwithstanding, because the Court finds that Plaintiff fails to satisfy its burden of establishing spoliation occurred under Rule 37(e) as to these first-call recordings—by failing to establish the evidence existed and was, therefore, capable of being lost—the Court notes that Plaintiff would likewise fail to establish Defendants' control of said evidence under the common law test, as discussed more fully, *infra*.

"It is self-evident that in order to obtain [] sanctions pursuant to Rule 37(e) spoliation must occur." *Kavanagh v. Refac Optical Grp.*, No. 15-4886, 2017 WL 6395848, at *2 (D.N.J. Dec. 14, 2017). In order to prove spoliation occurred, the moving party must prove that ESI was "lost." *See id.* (citations omitted). In other words, the moving party bears the burden of proof in establishing that the evidence at issue actually existed.[6] *See Eur. v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 175–76 (S.D.N.Y. 2022) (citation omitted) ("As a threshold matter, 'a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed.'"); *see also Friedman v. Phila. Parking Auth.*, No. 14-6071, 2016 WL 6247470 (E.D. Pa. Mar. 10, 2016) (denying motion for spoliation sanctions where movant failed to specifically identify any lost information).

**B. Analysis**

Defendants argue that Plaintiff fails to produce any evidence in support of its allegations of spoliation. The Court agrees. More critically, except for the *Schuchmann* recordings, the Court finds that Plaintiff fails to establish the evidence at issue actually existed. Consequently, Plaintiff cannot satisfy its burden of proof in establishing that said evidence was "lost" under Rule 37(e). For the same reason, and only insofar as the evidence at issue was not ESI, Plaintiff is unable to satisfy its burden of proof in establishing that Defendants had control of said evidence under the common law test. Accordingly, for the foregoing reasons, and those discussed more fully below, the Court will deny Plaintiff's cross-motion for sanctions.

---

[6] No party addresses what, if any, burden of proof is applicable here. *Compare Cat3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 498–99 (S.D.N.Y. 2016) (discussing the relevant case law and applying a clear and convincing standard), *with Friedman v. Phila. Parking Auth.*, No. 14-6071, 2016 WL 6247470, at *6–7 (E.D. Pa. Mar. 10, 2016) (recognizing the *Cat3, LLC* case and applying a preponderance of the evidence standard). The Court does not have to decide which standard of proof applies, however, since Plaintiff fails to satisfy either burden of proof. *See, e.g.*, *Kavanagh*, 2017 WL 6395848, at *2 n.5.

At the outset, the Court finds Plaintiff fails to establish that recordings of "first calls" were lost, destroyed, or otherwise concealed by Defendants. This is because Plaintiff fails to show such recordings actually existed. In other words, Plaintiff fails to show the alleged initial sales calls were even recorded by or on behalf of Defendants and thus, capable of being lost. Despite claiming to provide "direct evidence" of spoliation, Plaintiff's proofs amount to no more than circumstantial evidence at best, and speculation or conjecture at worst. Plaintiff's "two-call" theory posits that, because Defendants only produced recordings of the "second calls," they and their counsel must have concealed or destroyed recordings of the corresponding "first calls." *See* Pl.'s Br. at 1–3. Even assuming *arguendo* that this "two-call" theory is true, the failure to produce recordings of such first calls, by itself, does not necessarily support a conclusion that recordings of the first calls were lost or destroyed. An alternatively reasonable conclusion is that these first calls were just not recorded in the first place. To be clear, the Court in no way endorses or accepts Plaintiff's theory to be the case. The Court is simply illustrating how it fails to show that the alleged recordings were, more likely than not, lost, destroyed, or even made. *See, e.g.*, *Kavanagh*, 2017 WL 6395848, at *4 (finding missing portions of recorded conversations likely caused by the recording device being "stopped and started," and did not support the movants' conclusion that there were "likely other . . . recordings that were deleted"). Moreover, the manner in which Defendants' recordings were stored and produced fail to support a claim of spoliation, without more. *See id.* at *3 (rejecting the movants' argument that "spoliation can be inferred from the careless manner [its adversary's] recordings were stored and produced"). Lastly, Defendants specifically deny the recordings exist. Based on the present record, the Court sees no cause to doubt Defendants' representation. At most, Plaintiff has merely shown that such "first calls" more than likely may have occurred.

Having found that Plaintiff fails to establish any recordings of "first calls" actually existed, and therefore, could not be "lost" under Rule 37(e); it logically follows that Plaintiff is unable to establish Defendants' control of said evidence under the common law test.[7] As such, to the extent that Plaintiff alleges such recordings were not ESI, its cross-motion still fails.

As for the *Schuchmann* recordings, the Court finds Plaintiff's reliance on these recordings as a basis for spoliation is entirely misguided. To start, these recordings are in fact ESI and thus, subject to Rule 37(e). The Court agrees with Defendants that, while this issue could have properly been the subject of a discovery application, it is certainly not a proper basis for a spoliation motion. The two recordings were admittedly recorded by the consumer/plaintiff in the *Schuchmann* action, not by Defendants or anyone on their behalf. Defendants also deny possessing any record of the calls or having made them. Defendants also question whether the recordings were even responsive to Plaintiff's discovery requests. To the extent Plaintiff disputes Defendants' position, it should have timely raised the issue with the Court—yet it did not. Throughout the course of discovery, the Court conducted countless discovery dispute hearings to address the parties' discovery issues. This issue was not one of them. More importantly, defense counsel maintains the recordings "have been preserved." Defs.' Opp'n at 14. Again, based on the record, the Court sees no reason to doubt this representation. Plaintiff has failed to show that the *Schuchmann* recordings were "lost." Thus, Plaintiff fails to prove spoliation occurred and its cross-motion will be denied in its entirety.

---

[7] In order to establish a claim of sanctionable spoliation under the common law test, four elements must be met: (1) the evidence was in the party's control; (2) the evidence is relevant to the claims and/or defenses in the case; (3) actual suppression or destruction of the evidence has occurred; and (4) the duty to preserve the evidence was reasonably foreseeable to that party. *See Ortiz v. Adams*, No. 08-4509, 2018 WL 3410027, at *3 (D.N.J. July 13, 2018) (quoting *Bull*, 655 F.3d at 73). The party seeking sanctions bears the burden of proof as to each and every element of the test. *See Kuhar v. Petzl Co.*, No. 16-395, 2018 WL 6363747, at *5 (D.N.J. Nov. 16, 2018) (citation omitted), *R. & R. adopted*, 2018 WL 6331675 (D.N.J. Dec. 4, 2018).

### III.     CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **20th** day of **September**, **2023**, that Plaintiff's cross-motion for sanctions [ECF No. 76] is **DENIED**.

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc:  Hon. Karen M. Williams, U.S.D.J.